Dale HALFMANN, Plaintiff,

v.

USAG INSURANCE SERVICES,
INC., Defendant.

Civil Action No. 6:00–CV–070–C.

United States District Court,
N.D. Texas,
San Angelo Division.

Oct. 23, 2000.

Paul D. Stipanovic, Clyde A. Wilson, Jr., Gossett, Harrison, Reese, Wilson & Millican, P.C., San Angelo, TX, for plaintiff.

W. Hollis Webb, Jr., Lubbock, TX, for defendant.

## ORDER

CUMMINGS, District Judge.

On this day the Court considered Plaintiff, Dale Halfmann's ("Halfmann"), Motion for Remand, filed August 10, 2000. A Response to Plaintiff's Motion for Remand was filed on August 29, 2000, by Defendant, USAG Insurance Services, Inc. ("USAG"). Halfmann filed a Reply to USAG's Response on September 12, 2000. After considering all of the relevant evidence and argument, the Court **GRANTS** Halfmann's Motion to Remand.

## I.

### BACKGROUND

The Federal Crop Insurance Act ("FCIA") of 1938 was passed as part of New Deal legislation during the Great Depression to rescue and preserve agriculture in an effort to restore it to its position of strength in the national economy. *See State of Kansas, ex rel. Todd v. United States*, 995 F.2d 1505, 1507 (10th Cir.1993). Since that time the Act has been significantly expanded and remains "one of a panoply of government programs designed to encourage, by subsidy if necessary, the nation's agricultural business." *R & R Farm Enters., Inc. v. Federal Crop Ins. Corp.*, 788 F.2d 1148, 1154 (5th Cir.1986). The FCIA's express purpose is "to promote the national welfare by improving the economic stability of agriculture through a sound system of crop insurance...." 7 U.S.C. § 1502(a) (1999). As a part of the FCIA, the Federal Crop Insurance Corporation ("FCIC" or "the Corporation") was created. The FCIC was given the power to issue insurance policies and to reinsure insurance policies compliant with FCIC regulations, issued by agents of independent companies. 7 U.S.C. § 1506 (1999). Companies like USAG could then issue insurance policies covering crop damages, and, provided that the language of the policies complied with FCIC regulations, the FCIC would pay a claim on the policy in the event that the company could not.

Halfmann applied for and obtained a multi-peril crop insurance policy for his 1999 cotton crop through USAG, which was reinsured by the FCIC. During the 1999 growing season, Halfmann experienced a loss on his cotton crop and timely filed a claim with USAG. Halfmann's claim was denied. Subsequently, Halfmann brought the instant action in the 51st District Court for Tom Green County, Texas, on June 13, 2000, alleging breach of contract, unfair claim settlement practices, and violations of the Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code § 17.50 *et seq.* (Vernon 1987 &

Supp.2000). USAG was served on June 16, 2000, and on July 14, 2000, removed the action to the United States District Court for the Northern District of Texas, San Angelo Division, on grounds of complete preemption, substantial question of federal law, and artful pleading under the well-pleaded complaint rule. On August 10, 2000, Halfmann filed the instant Motion to Remand. Halfmann alleges that no federal question exists and that his state law claims are not completely preempted.

## II.

### DISCUSSION

### A. Well–Pleaded Complaint

Only state law causes of action that originally could have been filed in federal court may be removed to federal court by a defendant. 28 U.S.C. § 1441 (1993). Diversity jurisdiction or federal question jurisdiction is required. In the instant action, diversity jurisdiction is not alleged. USAG alleges that the action is properly removed on federal question jurisdiction grounds. Whether federal question jurisdiction exists is governed by the "well-pleaded complaint rule." *See Gully v. First Nat'l Bank,* 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936). The well-pleaded complaint rule provides that federal jurisdiction exists "only when a federal question is presented on the face of plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987) (citing *Gully,* 299 U.S. at 112–113, 57 S.Ct. at 97–98). Plaintiff is therefore the "master of the claim" in that a plaintiff may invoke or avoid federal jurisdiction. *Id.* (citing to *The Fair v. Kohler Die & Specialty Co.,* 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913); *Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 809 n. 6, 106 S.Ct. 3229, 3233 n. 6, 92 L.Ed.2d 650 (1986)). A plaintiff may simply rely exclusively upon state law to avoid federal jurisdiction over his or her claim. *Id.* There are, however, three rec-

ognized exceptions to the well-pleaded complaint rule: complete preemption, substantial questions of federal law, and artful pleading. The applicability of these exceptions in relation to the instant action is discussed at length below.

At the outset the Court acknowledges that the complete preemption issue has been addressed by the United States District Courts for the Southern and Eastern Districts of Texas in *Brown v. Crop Hail Management, Inc.,* 813 F.Supp. 519 (S.D.Tex.1993), and *Bullard v. Southwest Crop Insurance Agency, Inc.,* 984 F.Supp. 531 (1997), respectively. The *Brown* court determined that the FCIA completely preempts state law causes of action against Companies selling crop insurance policies reinsured by the FCIC. *Brown,* 813 F.Supp. 519. Conversely, the *Bullard* court determined that the FCIA does not completely preempt such claims. *Bullard,* 984 F.Supp. 531. This Court agrees with the conclusion reached by the *Bullard* court. The Court will address its disagreement with the *Brown* decision at each stage of the analysis below.

### 1. Complete Preemption

Complete preemption of state law claims was recognized as an "independent corollary" to the well-pleaded complaint rule in *Franchise Tax Board of California v. Construction Laborers Vacation Trust for Southern California,* 463 U.S. 1, 22, 103 S.Ct. 2841, 2853, 77 L.Ed.2d 420 (1983). The Supreme Court has stated that on occasion "the preemptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law [or statutory complaint] into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Caterpillar,* 482 U.S. at 393, 107 S.Ct. at 2430 (quoting *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 65, 107 S.Ct. 1542, 1547, 95 L.Ed.2d 55 (1987) (alteration added)). A state law claim in the completely preempted area is considered a federal claim and therefore, for purposes of federal question jurisdiction,

"arising under" the laws of the United States. 28 U.S.C. § 1331 (1993).

The complete preemption corollary to the well-pleaded complaint rule has been applied in relation to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., and the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185 et seq. The complete preemption corollary is distinguishable from what might be called simple preemption, which could be characterized as federal law preempting a state law cause of action and thus operating as a defense to a plaintiff's state law cause of action in the preempted area.[1] While complete preemption of a field of state law will permit a defendant to remove a cause of action to federal court, simple preemption will not. A federal law defense to a state law cause of action is not grounds for removal. Franchise Tax Bd. of Cal., 463 U.S. at 22, 103 S.Ct. at 2853; Caterpillar, 482 U.S. at 393, 107 S.Ct. at 2430. USAG relies upon State of Kansas, ex rel. Todd, 995 F.2d at 1507, to support its argument that Halfmann's claim is completely preempted. The Court finds this reliance is misplaced. Todd merely acknowledges that the preemption provisions of the FCIA are constitutional and enforceable against the states. The Court acknowledges that the FCIA contains preemptions. The question in the instant action, however, is whether Halfmann's claim is completely preempted.

The Fifth Circuit has addressed the application of the complete preemption corollary and identified three essential characteristics of a federal law that completely preempts state law causes of action. Aaron v. Nat'l Union Fire Ins. Co. of Pittsburg, Pa. v. American Home Ins. Group, 876 F.2d 1157 (5th Cir.1989). The characteristics the court identified are (1) statutory creation of a civil enforcement section granting a cause of action (not necessarily to the party in question), (2) a specific jurisdictional grant to federal district courts, and (3) manifestation of congressional intent that state claims be completely preempted. Id. at 1165. After careful examination of these factors, the Court finds in the instant action that the FCIA does not completely preempt Halfmann's state law causes of action.

### a. Civil Enforcement Provision

Initially, the Fifth Circuit determined in Aaron that every time state law causes of action were preempted by federal law, either simply or completely, a denial of the state law causes of action by the preempting federal law would occur. See id. at 1164. However, the court found that in every instance where there was complete federal preemption, the preempting federal law would provide an express civil enforcement section to grant a federal cause of action. Id. at 1165. While the FCIA and the Code of Federal Regulations ("CFR"), include specific preemptions of state law, neither the FCIA nor the CFR includes any statutory grant for a cause of action related to insurance policies issued by approved company providers on behalf of the FCIC. 7 U.S.C. § 1508(k) (1999); 7 U.S.C. § 1508(j)(2)(A) (1999); 7 C.F.R. pt. 400.351–352 (2000); Williams Farms of Homestead, Inc. v. Rain & Hail Ins. Servs., 121 F.3d 630, 633 (11th Cir.1997).

In contrast, the Brown court found a civil enforcement provision for suits against companies issuing policies reinsured by the FCIC in 7 U.S.C. § 1508(f) of the FCIA.[2] Section 1508(f) is now 7 U.S.C. § 1508(j)(2)(A) (1999), which states: "Sub-

---

1. "Simple Preemption" is not a term of art but provides a simple means by which to distinguish complete preemption from preemption by federal law acting as a defense to a plaintiff's claim.

2. 7 U.S.C. § 1508(f) (1993) provided: "In the event that any claim for indemnity under provisions of this chapter is denied by the Corporation, an action on such clam may be brought against the Corporation in the United States district court for the district in which the insured farm is located."

ject to subparagraph (B), if a claim for indemnity is denied by the Corporation or an approved provider, an action on the claim may be brought against the Corporation or Secretary only in the United States district court for the district in which the insured farm is located." [34] Conspicuously absent from the statute is an express statement that an action may be brought against an approved provider in federal district court. This Court considers below whether Congress intended this section to create a cause of action against approved providers and finds implying a federal cause of action unwarranted.

### b. Specific Jurisdictional Grant

In determining the second factor for complete preemption, the Fifth Circuit in *Aaron* looked to the Supreme Court's decision in *Taylor.* *Aaron,* 876 F.2d at 1165. In *Taylor,* the Supreme Court determined that ERISA was a complete preemption statute. *Taylor,* 481 U.S. 58, 107 S.Ct. at 1542. The Court found the jurisdictional grants in ERISA and the LMRA, which the Court had previously determined completely preempted state law claims, "closely parallel." *Id.* at 65, 107 S.Ct. at 1547. The Fifth Circuit then used the statutory language of ERISA and the LMRA to determine whether the statute in question in *Aaron* provided a sufficient jurisdictional grant to support complete preemption. *Aaron,* 876 F.2d at 1165.

The FCIA contains two jurisdictional grants. The first is located in § 1506 and provides that "[t]he district courts of the United States, including the district courts of the District of Columbia and of any territory or possession, shall have exclusive original jurisdiction, without regard to the amount in controversy, of all suits brought by or against the Corporation." 7 U.S.C. § 1506(d) (1999). The Court finds from the language of the statute that the grant of jurisdiction in § 1506(d) is limited to suits against the FCIC.

The second jurisdictional grant, regarding denial of claims for losses, is located in § 1508 and provides that "if a claim for indemnity is denied by the Corporation or an approved provider, an action on the claim may be brought against the Corporation or Secretary only in the United States district court for the district in which the insured farm is located." 7 U.S.C. § 1508(j)(2)(A) (1999). The language includes no grant regarding suits against agents or companies selling insurance reinsured by the FCIC. Similarly the Court finds that the jurisdictional language in § 1508(j)(2)(A) is limited to actions brought against the Corporation or Secretary of the Corporation. Once again there is no indication that the grant applies to agents or companies selling insurance reinsured by the FCIC.

The jurisdictional grants of the FCIA are very limited in comparison to the broad jurisdictional grants of the LMRA and ERISA. The jurisdictional grant in ERISA establishes jurisdiction in the district courts "to grant the relief provided for in subsection (a) of this section in any action." 29 U.S.C. § 1132(f) (1999). Similarly, the grant in the LMRA states that "[s]uits for violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties...." 29 U.S.C. § 185(a) (1998). Comparing the broad jurisdictional grants of the LRMA and ERISA to those of the FCIA, the Court finds no specific grant of jurisdiction.

This finding is, however, contrary to the finding of the *Brown* court. In *Brown,* the

---

**3.** The difference between the previous version and the current version is not relevant to the analysis here.

**4.** "Approved provider," "Company," and "insurance provider" mean a Company whose policies are reinsured by the FCIC. 7 U.S.C: § 1502(b)(2); 7 C.F.R. pt. 400.161(b).

court found that because the FCIA specifically grants federal jurisdiction for suits against the Corporation, the "jurisdictional grant would also seem to apply to FCIC reinsured companies in that 7 C.F.R. pt. 400.176 restricts the type of suits that can be brought against the FCIC."[5] *Brown*, 813 F.Supp. at 526.

This Court finds the language of 7 C.F.R. pt. 400.176 supports the permissibility of bringing a state law cause of action against a Company. Part 400.176 provides that a plaintiff may establish liability "in a court of competent jurisdiction." 7 C.F.R. pt. 400.176(b) (1997). Had the regulation intended to limit plaintiffs to bringing an action against Companies in federal court, it would have expressly stated so at exactly the juncture that it provided instead for courts of competent jurisdiction. In the absence of an express statement, this Court is inclined to follow the counsel of Justice Brennan in *Taylor*, which the Fifth Circuit relied upon in *Aaron*. 876 F.2d at 1163. Brennan warned "that the 'prudent' method of dealing with the issue when there is no clear manifestation of congressional intent to create removal jurisdiction is to remand the case to state court." *Id.* (quoting *Taylor*, 481 U.S. at 68, 107 S.Ct. at 1548). For these reasons this Court cannot agree with *Brown*.

### c. Congressional Manifestation of Complete Preemption

■ Defendant cites to Rules and Regulations of the Department of Agriculture for the Federal Crop Insurance Corporation and the memorandum prepared by the FCIC regarding the promulgation of state law preemptions at 7 C.F.R. pt. 400.351–352 (2000). *See* 55 Fed.Reg. 23,066 (June 6, 1990) (codified at 7 C.F.R. pt. 400.351–352). The Court, having reviewed the report, finds clarification as to the intended scope and purpose of the preemptions.[6] The supplemental information of the federal·regulation states:

> FCIC has encountered frequent occurrences of State agencies requiring change in federally approved insurance policies to the extent that neighboring policyholders receive differing levels of federal assistance depending on whether they obtain their policy from FCIC or from a reinsured company, or depending on whether they live in differing States.

> \* \* \* \* \* \*

> A number of instances have been reported where indemnities have not reached the intended recipient because of garnishment, liens, attachments, etc., served upon the reinsured companies under the various State laws. The clear statutory intent was that these assistance benefits be exempt from such interference. Judgments have been entered in State Courts under State statutory or common law providing for the payment of punitive damages or providing for some multiplication of damages under "good faith" or some other State

---

**5.** 7 C.F.R. pt. 400.176(b) (2000) (corresponds to the 1993 version in effect when *Brown* was decided) provides:

No policy of insurance reinsured by the Corporation and no claim, settlement, or adjustment action with respect to any such policy shall provide a basis for a claim of damages against the Company issuing such policy, other than damages to which the Corporation would be liable under federal law if the Corporation had issued the policy of insurance under its direct writing program, unless the claimant establishes in a court of competent jurisdiction, or to the satisfaction of the Corporation in the event of a settlement, that such damages were caused by the culpable failure of the Company to substantially comply with the Corporation's procedures or instructions in the handling of the claim or in servicing the insured' [sic] policy, or unless the Company or its agents were acting outside the scope of their authority (apparent or implied) in performing or omitting the actions claimed as a basis for the damage action.

**6.** Note, an agency's preemption regulations have no less preemptive effect than statutes. *Fidelity Fed. Savings & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982).

provision because of requirements of the FCIC Act or procedures and policy provisions mandated by the FCIC.

55 Fed.Reg. 23,066–23,067 (June 6, 1990) (codified at 7 C.F.R. pt. 400.351–352). The stated reasons for the legislation in no way express an intent to preclude state law causes of action for claims which are improperly denied. To the contrary, the preemptions were promulgated to prevent states from depriving individuals of benefits they receive from an FCIC insured policy.

As additional evidence of congressional intent, the Court has examined the legislative history of the FCIA. The present version of § 1508(j) was created by the passage of H.R. 4217 in October of 1994. Pub.L. No. 103–354, 108 Stat. 3183 (1994). The final version, however, was a modification of the version which originally passed the Senate, which said that "if a claim for indemnity is denied by the Corporation or by the private insurance provider, an action on the claim shall only be brought against the Corporation or Secretary or insurance provider in the United States District Court...." H.R. 4217, 103d Cong. § 1108(j)(2)(A) (1994). The language which would have preempted suing insurance providers in state court is absent from the final language of the section. From that absence, the Court infers that Congress intended to permit suits against approved providers in state court. Additionally, the Court notes that the amendment to the FCIA was passed after the Supreme Court's decision in *Taylor;* thus Congress can be said to have had constructive knowledge of the need to express in clear language the intent to completely preempt state law.

Despite the clear evidence to the contrary, the *Brown* court found congressional intent despite acknowledging that it "was unable to locate any legislative history that indicates that Congress intended the FCIA to have the same effect as the LMRA or ERISA." *Brown,* 813 F.Supp. at 527. The court insisted that, despite

the "closely parallel" language of the Supreme Court's decision in *Taylor,* it remained unsaid in the Supreme Court's analysis that Congress can draft jurisdictional grants in other ways that reflect intent to completely preempt state law. *Brown,* 813 F.Supp. at 527 (quoting *Taylor,* 481 U.S. at 65, 107 S.Ct. at 1547). This Court is unwilling to infer such a broad interpretation of *Taylor* and *Aaron.* The language found in the federal regulations and the warning of Justice Brennan compel this Court to deny complete preemption in the absence of anything less than the explicit requirements of *Aaron.* The Court thus finds the legislative history supports a finding that Congress intended to permit state court actions for denial of claims against approved insurance providers.

Having found none of the elements required for a showing of complete preemption, the Court concludes that the FCIA does not completely preempt state law causes of action. The Court makes no finding as to whether the claim is preempted in the form of a federal defense. That matter is not properly before this Court.

### 2. Substantial Question of Federal Law

The Supreme Court has determined that a case may " 'arise under' the laws of the United States if a well-plead complaint establishes that its right to relief under the state law requires resolution of a substantial question of federal law in dispute between the parties." *Franchise Tax Bd. of Cal.,* 463 U.S. at 13, 103 S.Ct. 2841. Conversely, however, the Court has also determined that incidental federal issues are not sufficient. Removal cannot be based simply on the fact that federal law may be referred to in some context in the case. If the claim does not "arise under" federal law, it is not removable on federal question grounds. *Merrell,* 478 U.S. at 808, 106 S.Ct. at 3233 n. 6 (1986); *Oliver v. Trunkline Gas Co.,* 789 F.2d 341 (5th Cir.1986). USAG argues that Half-

mann's claims must be addressed in federal district court because they require the examination and interpretation of federal law. In order for a company to have policies issued by or reinsured by the FCIC, those policies must comply with 7 C.F.R. pt. 400 (2000). After review of 7 C.F.R. part 400 and the requirements applicable to policies reinsured by the FCIC under the FCIA, the Court does not find that the interpretation of federal laws required to adjudicate Halfmann's claims is so substantial that it could be said to "arise under"federal law.

### 3. Artful Pleading

The artful pleading exception to the well-pleaded complaint rule is designed to preclude a plaintiff from pleading what is essentially a federal claim on state court grounds in order to avoid federal jurisdiction. Although the plaintiff is the "master of the claim" of his or her complaint, the federal judiciary cannot sit idly by while plaintiffs seek to avoid federal jurisdiction by the nature of the words they use. *Caterpillar*, 482 U.S. at 392, 107 S.Ct. at 2429 (citing to *The Fair*, 228 U.S. 22, 25, 33 S.Ct. 410, 411 (1913); *Merrell*, 478 U.S. at 809 n. 6, 106 S.Ct. at 3233 n. 6). The Fifth Circuit has determined that

> [t]he court must evaluate a plaintiff's motive for her failure to plead a federal cause of action. If the court concludes that the plaintiff's failure to plead her federal claim was not in good faith, but rather was an attempt to conceal the fact that her claim was truly federal, the court will allow the removal.

*Aaron*, 876 F.2d at 1161. The Court determined above that Halfmann's claims were not completely preempted by federal law. Additionally, the Court has found that Halfmann's claims do not raise a substantial question of federal law so as to require federal adjudication of the instant action. For those reasons the Court cannot then find that Halfmann in bad faith attempted to artfully plead a federal cause of action as a state cause of action. The Court concludes that Halfmann's claims were not artfully pleaded in a bad faith attempt to circumvent federal jurisdiction.

### B. USAG vs. American Growers

USAG further argues that Halfmann, in an effort to mask federal question jurisdiction, has failed to name American Growers as a defendant. USAG claims that American Growers was the company for whom USAG, as its agent, sold the policy. The Court has found that Halfmann's state law claims are not completely preempted and do not require resolution of a substantial question of federal law as to any insurance provider. In the absence of federal question jurisdiction, the Court finds that Halfmann did not attempt to avoid federal jurisdiction by failing to name American Growers as a defendant. Halfmann may sue whomever he desires, choosing to omit some parties who might be culpable. USAG cannot simply say that federal question jurisdiction exists because Halfmann left out a party USAG felt culpable and expect that to affect federal jurisdiction.

### III.

#### CONCLUSION

Because the cause was removed improvidently and without jurisdiction, Plaintiff's Motion for Remand is **GRANTED**. All relief not expressly granted is denied.

This action is **REMANDED** to the 51st District Court of Tom Green County, Texas. A certified copy of this order shall be mailed by the Clerk of this Court to the District Clerk of Tom Green County, Texas.

SO ORDERED.