540 S.E.2d 469

**Ronald W. LYERLY, Appellant,**

v.

**AMERICAN NATIONAL FIRE INS. CO., Respondents.**

**No. 3259.**

Court of Appeals of South Carolina.

Heard Oct. 10, 2000.
Decided Nov. 20, 2000.
Rehearing Denied Jan. 29, 2001.

Louis D. Nettles, of Nettles, McBride & Hoffmeyer, of Florence, for appellant.

Richard B. Ness, of Early & Ness, of Bamberg, for respondent.

GOOLSBY, Judge:

Ronald W. Lyerly brought this action to collect benefits under a crop insurance policy issued by American National Fire Insurance Company. The circuit court granted summary judgment to American National, finding Lyerly's action was not timely filed in accordance with the terms of the policy. Lyerly appeals. We reverse and remand.

## FACTS/PROCEDURAL BACKGROUND

In 1995, Lyerly purchased a Multiple Peril Crop Insurance policy from American National, a private insurer, to insure his tobacco crop against losses due to certain natural causes, including adverse weather, fire, and plant disease. The policy covered the 1995 crop season and was issued in accordance with the provisions of the Federal Crop Insurance Act (FCIA).[1] The policy was reinsured by the Federal Crop Insurance Corporation (the Corporation). The Corporation is a federal agency established to carry out the purposes of the FCIA by regulating the premiums for coverage and the terms of the policies.[2]

The policy in this case consisted of two sections: "General Provisions" and "Special Provisions, Tobacco Guaranteed Production Plan." The General Provisions limited the right to sue to one year after a loss is sustained:

### 8. SUIT AGAINST US.

You cannot bring suit or action against us unless you have complied with all of the policy provisions. If you do enter suit against us you must do so *within 12 months of the occurrence causing the loss or damage.*

(State law exceptions to the 12 months limitation, if any, are contained in the State Endorsement.)

(Emphasis added.)

In addition, the American National policy also contained a state law exception in Paragraph 16, which provided:

---

1. 7 U.S.C.A. §§ 1501 to 1521 (1999 & Supp.2000).

2. 7 U.S.C.A. §§ 1503, 1508(d) (1999).

## 16. CONFORMITY TO STATUTES.

If any terms of this policy are in conflict with statutes of the state in which this policy is issued the policy will conform to such statutes. Printed terms in this policy which are in conflict with state statutes and are made to conform will not be a basis for voidance of the policy.

Lyerly completed harvesting his tobacco crop in September 1995 and thereafter submitted a claim to American National alleging a crop loss. Lyerly received a letter dated October 23, 1995, from Great American Insurance Company, on behalf of American National, advising him a prior 1993 claim was "under investigation by FCIC Compliance" and that it was "holding [his] 1995 tobacco claims . . . until a decision has been made on their findings."[3] According to Lyerly, American National never formally denied his claim.

Lyerly filed this complaint in the circuit court on October 23, 1996, alleging "[t]hat during the 1995 crop season, [he] incurred certain covered losses to his crops and made a valid claim therefore." Lyerly asserted American National failed to pay the sums due under the 1995 crop insurance policies, and he sought actual damages of $45,000.00. In his response to American National's requests to admit, Lyerly admitted his loss, at the latest, "occurred on or before September 27, 1995."[4]

American National moved for summary judgment, arguing in part that Lyerly "failed to timely commence his action" within "twelve months after the occurrence causing the loss or damage to the crop" as required by the policy. American National asserted the loss, if any, occurred prior to September 28, 1995, based on Lyerly's admissions, but this action was not filed until October 23, 1996, some thirteen months later. American National also argued any state law causes of action were preempted by federal law and Lyerly's only remedy was

---

**3.** American National is within the fleet of insurance companies doing business together as Great American Insurance Company.

**4.** American National propounded a series of questions to Lyerly concerning the date of the loss which asked him variously to admit that the loss occurred before the 6th, 19th, 26th, and 27th of September 1995. Lyerly admitted all four dates in his response.

the "construction and enforcement of the policies of insurance pursuant to the terms thereof."

In response, Lyerly argued (1) that the statute of limitations applicable to this action is 7 U.S.C.A. § 1508(j)(2)(B) (1999), which allows the plaintiff twelve months after the final denial of the claim to file an action; and (2) the period for filing an insurance claim could not be contractually shortened, relying on section 15–3–140 of the South Carolina Code.[5] Lyerly asserted his claim was not untimely because he had one year after the letter from the insurer, or until October 23, 1996, which is the date he filed this action.

The circuit court granted summary judgment to American National based on its determination that Lyerly's action was not timely filed "within 12 months of the occurrence causing the loss or damage" as required by the policy. The court found section 15–3–140 of the South Carolina Code was not applicable as "all state laws otherwise applicable to or governing this action are preempted by operation of federal law." The court then concluded, "While ... this court has concurrent jurisdiction with the federal district court to adjudicate this action, I find this court must apply the federal laws applicable to such actions in making that adjudication, and [section] 15–3–140, Code of Laws of South Carolina, does not apply to this action." Lyerly appeals.

## STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[6] "In

---

5. *"No clause, provision or agreement in any contract* of whatsoever nature, verbal or written, *whereby it is agreed that either party shall be barred from bringing suit upon any cause of action arising out of the contract if not brought within a period less than the time prescribed by the statute of limitations,* for similar causes of action, *shall bar such action,* but the action may be brought notwithstanding such clause, provision or agreement *if brought within the time prescribed by the statute* of limitations in reference to like causes of action." S.C.Code Ann. § 15–3–140 (1977) (emphasis added).

6. Rule 56(c), SCRCP.

determining whether any triable issues of fact exist, the evidence and all reasonable inferences arising therefrom must be viewed in the light most favorable to the non-moving party." [7]

## LAW/ANALYSIS

Lyerly contends the circuit court erred in granting summary judgment to American National on his 1995 claim for crop losses. We agree.

The FCIA was enacted "to promote the national welfare by improving the economic stability of agriculture through a sound system of crop insurance and providing the means for the research and experience helpful in devising and establishing such insurance." [8] The Corporation was created to carry out the purposes of the FCIA by regulating premiums and policies.[9] It has the power to insure farmers against losses due to drought, flood, or other natural disasters.[10] The FCIA authorizes two types of crop insurance policies: (1) policies directly issued by the Corporation; and (2) policies issued by private insurance companies, which are reinsured by the Corporation.[11] To encourage coverage, a portion of the farmer's insurance premium is paid by the Corporation.[12]

Reinsured policies must be on terms approved by the Corporation and are subject to the FCIA and Corporation regulations:

Federal Crop Insurance Corporation will offer Standard Reinsurance Agreements to eligible Companies under which the Corporation will reinsure policies which the Companies issue to producers of agricultural commodities. The Stan-

---

7. *Summer v. Carpenter*, 328 S.C. 36, 42, 492 S.E.2d 55, 58 (1997).

8. 7 U.S.C.A. § 1502(a) (1999).

9. 7 U.S.C.A. §§ 1503, 1508(d)(1) (1999).

10. 7 U.S.C.A. § 1508(a)(1) (1999) ("To qualify under a plan of insurance, the losses of the insured commodity must be due to drought, flood, or other natural disaster (as determined by the Secretary).").

11. 7 U.S.C.A. § 1508(a)(1) (1999).

12. 7 U.S.C.A. § 1508(e) (1999).

dard Reinsurance Agreement will be consistent with the requirements of the Federal Crop Insurance Act, as amended, and provisions of the regulations of the Corporation found at Chapter IV of Title 7 of the Code of Federal Regulations.[13]

The regulations are issued to "prescribe the procedures for federal preemption of State laws and regulations *not consistent* with the purpose, intent, or authority of the Act." [14] They apply to *"all policies of insurance, insured or reinsured by the Corporation,* contracts, agreements, or actions authorized by the Act and entered into or issued by [the Corporation]." [15] Specifically, the regulations provide:

> No State or local governmental body or non-governmental body shall have the authority to promulgate rules or regulations, pass laws, or issue policies or decisions that directly or indirectly affect or govern agreements, contracts, or actions authorized by this part unless such authority is specifically authorized by this part or by the Corporation.[16]

The regulations also provide that no policy of insurance reinsured by the Corporation shall provide a basis for a damages claim against the company issuing the policy, other than damages to which the Corporation would be liable under federal law if the Corporation had issued the policy of insurance under its direct writing program, unless the claimant establishes such damages were caused by the culpable failure of the company to substantially comply with the Corporation's

---

**13.** 7 C.F.R. § 400.164 (2000); *see also* 7 U.S.C.A. § 1508(h)(3)-(4) (1999) (prescribing the procedures for the submission, review, and approval of policies).

**14.** 7 C.F.R. § 400.351 (2000) (emphasis added).

**15.** *Id.* (emphasis added).

**16.** 7 C.F.R. § 400.352 (2000); *see also* 7 U.S.C.A. § 1506(1) (1999) ("State and local laws or rules shall not apply to contracts, agreements, or regulations of the Corporation or the parties thereto to the extent that such contracts, agreements, or regulations provide that such laws or rules shall not apply, or *to the extent that such laws or rules are inconsistent* with such contracts, agreements, or regulations.") (emphasis added); *see, e.g., Horn v. Rural Community Ins. Servs.,* 903 F.Supp. 1502, 1505 (M.D.Ala.1995) (stating that 7 U.S.C.A. § 1506(1) "provides a preemption defense *where state or local laws conflict with provisions in a contract made pursuant to the FCIA* ") (emphasis added).

procedures or instructions in the handling of the claim or in servicing the policy.[17]

Section 1508(j)(2) of the FCIA sets forth a one-year statute of limitations for bringing an action after denial of a claim:

### (2) Denial of claims

### (A) In general

Subject to subparagraph (B), if a claim for indemnity is denied by the Corporation or an approved provider, an action on the claim may be brought against the Corporation or Secretary only in the United States district court for the district in which the insured farm is located.

### (B) Statute of limitations

A suit on the claim may be brought not later than 1 year after the date on which final notice of denial of the claim is provided to the claimant.[18]

Under the FCIA, the federal district courts "have exclusive original jurisdiction, without regard to the amount in controversy, of all suits brought by or against the Corporation." [19] As to reinsured policies issued by private insurers, the circuit court found that, although state and federal courts have concurrent jurisdiction over claims involving reinsured policies, federal law preempts any state law provisions that would affect the claim and federal statutes and regulations enacted in this area are controlling.

The circuit court stated, "Federal regulations codified in 7 C.F.R. § 400.351 and § 400.352 preempt state law causes of action as to all policies of insurance issued or reinsured by [the Corporation]." The court then noted that § 400.351 provides the Corporation's regulations govern all policies insured or reinsured by the Corporation. The court concluded: "I find plaintiff's state law causes of action, and the state laws which would otherwise be applicable to this action, are completely

---

17. 7 C.F.R. § 400.176(b) (2000).

18. 7 U.S.C.A. § 1508(j)(2)(A)-(B) (1999).

19. 7 U.S.C.A. § 1506(d) (1999).

preempted by the Federal Crop Insurance Act and the FCIA regulations enacted pursuant thereto." [20]

 Authority supports the circuit court's finding that state courts have concurrent jurisdiction to hear actions against private insurers; [21] however, contrary to the circuit court's finding the FCIA does not entirely preempt state law.

The Federal Crop Insurance Act does not create a federal cause of action by an insured against a private crop insurer which is reinsured by the Federal Crop Insurance Corporation (FCIC), based on the insurer's denial of [an] insured's claims. Further, *the Federal Crop Insurance Act (FCIA) does not completely preempt state law;* thus, the FCIA does not give rise to federal question jurisdiction by super preemption when it is raised as [a] defense. [22]

Although there is no South Carolina appellate decision on point, several courts recently addressing the issue have held that the FCIA does not preempt state law causes of action in suits against private companies on reinsured policies. [23]

---

**20.** *See Owen v. Crop Hail Management,* 841 F.Supp. 297 (W.D.Mo.1994) (holding that the FCIA completely preempts state law); *Brown v. Crop Hail Management, Inc.,* 813 F.Supp. 519, 526 (S.D.Tex.1993) ("Congress and the USDA have clearly demonstrated that the FCIC and FCIC reinsured entities are immune from suit based on state law.").

**21.** *O'Neal v. CIGNA Property & Cas. Ins. Co.,* 878 F.Supp. 848 (D.S.C. 1995) (holding that the FCIA's provision for exclusive original federal jurisdiction in 7 U.S.C.A. § 1506(d) refers only to suits brought by or against the Corporation, not to other parties, such as private insurers); *see also Holman v. Laulo–Rowe Agency,* 994 F.2d 666, 669 (9th Cir. 1993) ("[T]he FCIA does not have the extraordinary preemptive force necessary for the application of the doctrine of complete preemption."); *Bullard v. Southwest Crop Ins. Agency, Inc.,* 984 F.Supp. 531 (E.D.Tex. 1997); *Horn v. Rural Community Ins. Servs.,* 903 F.Supp. 1502 (M.D.Ala.1995); *Hyzer v. Cigna Prop. Cas. Ins. Co.,* 884 F.Supp. 1146 (E.D.Mich.1995).

**22.** 21A Am.Jur.2d *Crops* § 8 (1998) (emphasis added); *see also Holman,* 994 F.2d at 669 ("The jurisdictional issue of whether complete preemption exists ... is very different from the substantive inquiry of whether a 'preemption defense' may be established.").

**23.** *Meyer v. Conlon,* 162 F.3d 1264 (10th Cir.1998); *Williams Farms of Homestead, Inc. v. Rain & Hail Ins. Servs.,* 121 F.3d 630 (11th Cir. 1997); *Bullard v. Southwest Crop Ins. Agency, Inc.,* 984 F.Supp. 531 (E.D.Tex.1997).

■ In *Williams Farms of Homestead, Inc. v. Rain & Hail Insurance Services, Inc.,*[24] the Eleventh Circuit analyzed the legislative history of the FCIA and held that section 1508(j)(2)(A) does not preclude state law claims in suits against private insurance companies. The court explained that, under the original FCIA enacted in 1938, only the Corporation issued crop insurance policies and handled policies, but when the FCIA was amended in 1980, Congress authorized private insurance companies to sell insurance policies that were reinsured by the Corporation. As part of the 1980 amendment, section 1508(j)(2)(A) was changed to state that exclusive original federal jurisdiction is granted as to claims against the Corporation. The Eleventh Circuit stated this provision does not apply to private insurance companies and state law claims against them are not preempted. We agree.

■ Section 400.351 of the FCIA regulations states the regulations were issued "to prescribe the procedures for Federal preemption of state laws and regulations *not consistent with the purpose, intent, or authority of the Act.*"[25] In this case, under section 1508(j)(2)(B), the Act provides twelve months after the denial of a claim to bring suit, and under state law, American National would be prohibited from shortening this period.[26]

Although American National asserts the terms of its policy should be controlling regarding the time to file suit rather than the FCIA's provision, it nevertheless argues its policy term conforming the policy to state law should be of no force and effect because the FCIA preempts state law. We find this argument to be unavailing. American National cannot enforce the policy terms in a piecemeal fashion, adopting only the terms it chooses to enforce.

Under the circumstances present here, state law is not inconsistent with the intent of the FCIA. To prohibit access to the courts before a claim is ever denied would be contrary

---

24. 121 F.3d 630 (11th Cir.1997).

25. 7 C.F.R. § 400.351 (2000) (emphasis added).

26. *See* S.C.Code Ann. § 15-3-140 (1977) (a party may not contractually shorten the otherwise applicable statute of limitations for bringing suit).

to the FCIA's statute of limitations and its purpose of "promot[ing] the national welfare by improving economic stability of agriculture through a sound system of crop insurance."[27] Because we find consistent state law provisions are not completely preempted and the terms of American National's own policy provide that the policy would be conformed to state law, we conclude Lyerly should not be prevented from proceeding with his suit against American National. This is especially appropriate in light of the fact that American National apparently has never formally denied the claim.[28] Accordingly, we reverse the grant of summary judgment to American National and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

ANDERSON and HUFF, JJ., concur.

**27.** 7 U.S.C.A. § 1502(a) (1999).

**28.** Lyerly asserts that American National delayed payment of the 1995 claim because of problems stemming from a 1993 claim under which Lyerly was not the insured. On page four of his brief Lyerly states "[t]here is nothing in the record to establish that [American National] ever denied the claim. To allow the insurer to escape payment of benefits under the time to sue clause, when the delay is a result of the insurer's fault ... would be unjust."